Andrew Adler is here for the appellant. Gonzalez, Kristen Cooper Holliday is here for the United States. And Mr. Adler, you may begin your argument. Thank you, Your Honor. May it please the Court, Andrew Adler from the Federal Defender's Office along with Ashley Kaye on behalf of Victor Grandia Gonzalez. I think it would be helpful to begin by breaking this Fourth Amendment appeal into three things. The first is whether the Fourth Amendment contains an in-the-presence requirement for warrantless misdemeanor arrests. If the answer is no, we lose. However, the answer is yes based on the original meaning of the Fourth Amendment as reflected in the common law rule articulated repeatedly by the Supreme Court. Second issue is whether if there is an in-the-presence requirement, could the officers nonetheless consider the conduct reported by the complainant? That's the route that the district court took in this case. We think that is wrong because it's undisputed that the officers themselves did not see that conduct in their presence. Third, and finally, if we discard the complainant's report in this case, did the officers nonetheless have probable cause for loitering and prowling based on what they themselves saw? Now, the district court did not find that and the government has not argued that because the complainant in this case, everything that he reported, colored everything the officers did and we have cited... On select common law, this is the question go to your second issue, in the presence requirement. At common law, was it enough for an officer to see part of what happened in order to be able to meet the requirement and to make an arrest? Your Honor, I don't know the answer to that. However, in this particular... There's some early American cases which suggest that is enough. What does that tell us as part of the common law analysis? Well, even if that were true, it wouldn't affect the outcome in this case because there's no case law that I'm aware of that allows an officer to that was reported by someone else, a victim, a witness, there's no case law that the government cites that says that. Well, that would be the part, but that would probably be partial. In other words, you'd always have to be a report of something else from somebody else and then see something in part and that seems to be what happened here. They saw something suspicious. I tend to agree with you that what they saw alone would not be enough, but you combine that with the other things that they learned, does that not meet the in the presence requirement because at least some of the activity here was in their presence? Your I think the answer to that is no. When we're talking about conduct... What's your best authority, and I know you've looked at the authorities, what's your best authority for that on the as a matter of common law? So I think this court is, this court's predecessor opinion in Clay from the former Fifth Circuit in 1956, pages 201 to 202 in footnote 7 says that the officers in that case could not consider something that was reported to them by a confidential informant. They couldn't even consider in that case their own knowledge. That doesn't answer the presence. There was only the information there, and I tend to agree with you or I'll assume for the moment that if it was only the information that was related to them, that that would not be enough to meet the in the presence requirement. Well your honor, they did see that the men in that case driving down the highway. They knew that the men were reputed gamblers. They knew that the men had prior convictions for gambling, and they still said we cannot consider this prior information. The Supreme Court's decision in Carroll, same sort of thing. It was very reliable, convincing evidence that that gave for them probable cause to believe there was illegal liquor in the car, still said no, we cannot consider that information. All right, I want to, you don't have a ton of time, I want to talk about the first issue. So your syllogism as I understand is the Supreme Court, at least now, has said that the reasonless requirement is essentially read to be no less than the common law. That's sort of major premise, minor premises. Add common law, it required in the presence, and so because it's not in the presence here, that would not meet the requirement. Is that, is that a fair understanding of your argument? Okay, so I want to talk about number two. So I'm assuming number one, I'm talking about number two now. Can I ask a question before we get to number two? Eight other circuits have considered this, this issue. What have the other eight circuits said about part of the conduct being conducted in the presence of the arresting officers? Did they say anything? No, no, your honor, because those circuits, I assume you're referring to the under the Fourth Amendment. I don't think it's eight, I think it's closer to four perhaps, maybe five, depending on how you read them, but the latest of those I believe is in 2000, and so this is, you know, a long time ago when we're talking about today, the original understanding of the Constitution, that was not the dominant mode back then, and what they overlooked was all of these Supreme Court cases, at least five of them going back to 1885, articulating this common law rule for the in the presence requirement. But didn't we in Knight versus Jacobson in a footnote say, we note in passing that every circuit that has addressed this issue has held that the Fourth Amendment does not include an in-presence requirement for a warrantless misdemeanor arrest? Yes, that's correct, your honor, but of course the court expressly reserved the question in that footnote, and the cases at site, you know, they do not consider or at least do not give appropriate weight to the common law rule that the Supreme Court has repeatedly articulated in five precedents going back to, again, 1885 and all the way to Atwater in 2001, and again in Virginia versus Moore in 2008. So the common law rule, I think, is very well established, and I think it's just that at the time those circuits decided the cases, we were not living in the original interpretation mode of the Constitution that we are now living. Really moved in a different direction since then. Exactly, and in 2012, for example, the Supreme Court for the very first time in the United States versus Jones said that the common law, that was the first time the Supreme Court said that, repeated that again in Lange versus California in 2021. So I want to talk to you about the common law, because you've now said a few times that it's pretty well established. I think those are the words you just used a moment ago. So Judge Sutton in Graves wrote, in my mind, a pretty comprehensive opinion on this, and he's a pretty smart guy, way smarter than the person sitting all the way to the right on this particular bench, and he looked at all of this, and from his review, he was not convinced that there was sort of a clearly established, I think that's the words that the Supreme Court has used, or a clearly articulated common law rule, and if there's not, then minor premise two seems to fall apart. So what do you make of his review of the sources? Yeah, so I think if you would think that the common law rule that the Supreme Court itself has repeatedly articulated based on its historical review of the record, if you think it's not established, then I think we're in trouble, and I understand what you're saying. I think Chief Judge Sutton's opinion in that case did not give significant or appropriate consideration to the Supreme Court's own precedence on this. I do not... I understand what the court has said, but if you, he looked at the actual, and you've cited them, the actual underlying documents, which we're supposed to do, right? We're supposed to do. So looking at the actual underlying documents, is he wrong? Yes, I believe that he's wrong, and because the Supreme Court already did that in all of these precedents, it's already... So let's talk about Hale. So Hale seems to suggest, and I'll quote a part of it here, but if there be an affray, and as I understand it, an affray is a misdemeanor like crime. I think you agree with that. Yes. Though to prevent it, or in the time of the affray, the constable may upon information or complaint arrest the well that if the affray be passed and no danger of death, the constable cannot arrest the parties without a warrant from a justice of the peace. That's my best, because they use F's as S's, so it's hard to read it, but as I read that, that seems to suggest that upon information or complaint, that an arrest can be made by a constable by an affray. Now there's a but or an if there, but that doesn't mean, that doesn't reek of clarity to me. If you want to, so Your sentence in all of the historical documents that I have seen, that cuts the other way, and I just don't think that is enough to go against every... One of the sources the court, the Supreme Court itself has used, and that you use, but that's not just any source, it is the, one of the two big ones they look at. Well there's other language in that exact same source, and we talk about this in our reply brief. Let's look at another language. So the page right before the one I read from, says that if information be given to a constable, that a man and a constable are in incontinency together, he maybe take, he may take the neighbor, the neighbors, and arrest them, and commit them to prison to find sureties for the good behavior. Now as I understand it, incontinency was a misdemeanor, not a felony at the, at the time that we're talking about there, and that also seems to suggest that upon information and belief, and you'd understand that because that particular crime would not be one that officers would see presence, was one that where a constable could arrest. That that too does not seem to be the clarity that would needed for a hard and fast rule. Well if I think if the court wants to go that way, I think that's the only possible way to affirm in this case, and if the court thinks it's not clear, then I think it should say that and allow the Supreme Court to explain why it's gotten the history so wrong for over a century. I also think it's really not. We're pretty good company with Judge Sutton in evaluating that. It's not as if we're, we'd be the only people in the Perhaps I just do not think it is appropriate for this court to be second-guessing what the Supreme Court has repeatedly said for so long, and it's not like the Supreme Court is just saying this in an offhanded way. They are looking at the sources. They're not looking at one source. They're looking at a lot of sources, and if you look at the Atwater decision, which is the most recent of these cases. The Supreme Court has really sort of avoided this issue over the years and the other circuits that have considered the issue. They don't say, they don't say much about the warrant requirement for misdemeanor arrest. They don't say so much. Couldn't it be because things have changed a lot since the Supreme Court interpreted the common law? Back then, there might have been less than a hundred federal crimes. Today, there are almost 4,000 federal crimes, so it seems like there would be some administration problems, administrability problems to have police officers on the scene trying to distinguish between whether or not, you got over 3,000 federal crimes trying to distinguish between a misdemeanor and a felony for the purpose of determining whether or not they're going to, they're going to need a warrant. Could that be why the law has developed differently over the decades? I have two responses to that, Your Honor. I think first of all, and this cuts in our favor, the fact that back at common law, I mean, pretty much everything was a misdemeanor, right? So this really, this in the presence requirement, really hamstring law enforcement way more than it would today. Mostly everything is a felony now. I mean, do we want officers out there trying to decide whether or not this is a misdemeanor or a felony given there are almost 4,000 federal crimes now? Well, of course, this is going to arise in the context of state offenses primarily, not Lang v. California, the most recent. Well, Your Honor, in Lang v. California, the Supreme Court considered this exact issue and said, you know what, that is not enough to overcome the history, to overcome the common law. In the context of the misdemeanor felony distinction, and Chief Justice Roberts wrote a separate opinion saying, how are cops supposed to be able to do this in the context of misdemeanor v. felony flight? And the majority opinion, seven justices, I believe, said, you know what, the history is just too strong here. And that is the world that we are living in We'll reserve some time for rebuttal. We'll hear from the government. Ms. Holliday? Good morning, Your Honors. May it please the Court, Kristen Holliday for the United States. The arrest in this case was valid because there was probable cause to believe that Officer Sanchez discovered Grandia Gonzalez in the process of loitering or prowling. Probable cause is not a high bar, and even setting aside information from the complainant, that standard is satisfied by the officer's own observations alone. Officer Sanchez encountered Grandia Gonzalez walking down the dark streets of a neighborhood where he did not live, dressed in black and carrying scissors in his waistband. A very odd place to carry a dangerous tool. He only knew there was scissors after stopping them. Um, I think they saw a metallic object. I think that's probably fair part of the analysis, right? That's correct, Your Honor. But it's our position that the officers can consider information that they learned after stopping Grandia Gonzalez, but before arresting him. That's consistent with this court's analysis in Gordon, in which the court was considering a loitering or prowling arrest under Florida law. The opposing counsel makes a pretty convincing case to me, and I'm only speaking for myself, that there's a real strong history of us not finding probable cause, both in Florida and just in general, of people walking down the street at night in their neighborhoods. Um, and that we don't want police just stopping folks and arresting them because they happen to be walking at any particular time and they're in a neighborhood. Um, I just I think it's a tough self if you take out everything the officers knew from just what they saw, which is a man walking in the middle of the street at five in the morning. I want to push back a little bit on that, Your Honor, because I do think that it's entirely proper for the officers to have considered everything up until the moment of the arrest. And by that time, they did know that he had been carrying scissors in his waistband. So I think I agree with you that if all the officers had seen was a man walking down the street a little after five in the morning, we're not saying that that's enough for probable cause. We don't think the analysis is that limited. And we do think that when you take the fact that you have someone walking in a neighborhood where he doesn't live, he's wearing all black, which would be a very odd choice for a pedestrian who's just out exercising. It's hard to be visible when you're wearing all black and it's dark out, and he's got the scissors in his waistband, almost like they're holstered and at the ready. I mean, he's not wearing them in his backpack, even though he's got a backpack, too. I think all of that together gives officers probable cause. As this court knows, probable cause is not a high bar. It just means that a reasonable officer could conclude, not even must conclude, that there's a substantial probability of criminal activity. We think that's satisfied here, and we think let's assume I disagree with you for the moment. So I'd like to go to my first question to your opposing counsel, which is what do we make of in the presence requirement when at least some of the activity here happened in the presence? So your opposing counsel says Carroll and Clay suggest that all of it needs to happen or none of it can be considered as part of the probable cause analysis. So I disagree with my friend on the other side's reading of those two cases. I guess I'll start with Clay. So I think as your Honor's questions got at the heart of this, I don't read Clay to say that the officers had to ignore all of the other information they had. I read Clay to say that officers can't rely entirely on information that they already know if they don't see any, at least, minimally suspicious conduct in their presence. We think this case is a lot more like Chapman, which as we explained in our brief, is a case where the officers have background knowledge about the individual they're observing, and then the conduct in the officer's presence, which was the possession of almost 10,000, I believe, pounds of sugar. The officers were able to draw on the information that they already had about Chapman to interpret what they were seeing here. That's what we're asking the court to say in this case. With note that the statute at issue in Carroll dealt with officers who discovered people in the act of transporting liquor, and what the court said is certainly it would be a very narrow and technical construction of the word discovers, which would limit it to what the officer sees, hears, or smells as the automobile rolls by, and exclude therefrom, when he identifies the car, the convincing information that he may previously have received as to the use being made of it. So I think there's even language in the statute that suggests it would be a very strange way to enforce the law that would require officers to put on blinders and ignore information that they have, no matter how credible, when they're interpreting what they see in front of them. What is the Fourth Amendment reasonableness requirement? I mean, there is language from the Supreme Court dating back, we'll call it from Carroll, so we're talking about the 20s and 30s, all the way to the 2000s, which suggests that while common law is relevant and should be considered, it's one inquiry as part of sort of the overall reasonableness analysis. And then you have some later cases, which your opposing counsel correctly quotes and cites, which seem to suggest that reasonableness is the sort of the bottom line of reasonableness is the common law, and then any protections can be added on from there, but nothing less than that. What's the government's position regarding where the common law stands with defining what is reasonable under the Fourth Amendment? Yes, so the government does not agree that the common law necessarily sets the floor and that the Fourth Amendment just sets the common law wholesale. I think, respectfully, my friend on the other side is over-reading Jones. I read Jones to say that the Fourth Amendment needs to provide the same degree of protection that the Fourth Amendment provided at the framing, but I think the court, you know, even as recently as Lange, which my friend on the other side relies on heavily, said that the common law may be instructive. So even in Lange, the most recent case where we have the court looking at the common law in the context of the Fourth Amendment, the court does not just say we adopt the common law wholesale. The court rather says we look at the common law because it can be informative. I don't think anyone's saying you adopt it wholesale. I think what they're saying is the Fourth Amendment can't abrogate or go below what the common law protected. In other words, the common law was sort of the tableau in which the Fourth Amendment was passed, and that's sort of the floor in which it is, and so it may grant greater protections, but it's not going to grant lesser protections. Well, the government's position is that we do not think that the Supreme Court  What do we make of that language in Jones? I, again, Your Honor, I read the language in Jones to say that the Fourth Amendment has to mean the same thing now as it does then, and that the court in Lange has said that the common law may be informative into what the Fourth Amendment means when it was adopted, but not that it's necessarily dispositive, but I don't want to push too hard on this because I think, Your Honor, in your colloquy with my friend on the other side, really got at what we see as the nub of this case, which is that it's not enough to just repeat that the Fourth Amendment or that the common law included an in-the-presence requirement, as if that's some sort of talismanic phrase, and then the defendant wins in this case. I don't think that my friend on the other side has offered any common law evidence that if there is such a thing as an in-presence requirement, that requirement requires officers to put aside all other information they know when interpreting what they see, and I think Your Honor pointed to passages in Hale that suggest that even at common law, constables were allowed to rely on information from this court. Do you think the common law has to be, in order for your friend on the other side to prevail, that it has to be clearly established without a doubt, or is it sufficient that there is some evidence in the common law that supports the position? So we do think that he needs a pretty high degree of clarity. If you look at the court's decision in Atwater and in Lang, the court is really looking for a high degree of clarity in the common law, but even if there were some lower degree of clarity that was required, I just don't think my friend has evidence for the idea that any in-presence requirement was as stringent as would invalidate the arrest here. I don't think he's pointing to common law authority that really flushes out what an in-presence requirement means, and here, as Judge Luck pointed out in his colloquy with my friend on the other side, we have observations by the officers. The government does believe that the officers can consider everything up until the moment of arrest. As I said earlier, that's consistent with this court's own analysis in Gordon, and so it would be very odd to say that officers in interpreting what they see are not allowed to consider what they already know. I know we've already touched on administrability this morning, and I just want to flesh that point out a little bit. I think under defendant's rule, an officer arriving on the scene has to undertake a very artificial analysis, and I want to explain what I mean. So in assessing whether an officer has reasonable suspicion to conduct a Terry stop, I think everybody in this courtroom agrees that the officer can consider the whole universe of information known to him, and I think everyone also agrees that in assessing whether... Can we just unpack that? That seems really odd to me, that somehow in the search context, which the Supreme Court doesn't distinguish, but in the search, or the Fourth Amendment doesn't distinguish, but in the search context, we can use all this background information, but in the seizure or arrest context, we cannot. Like, where is that in the Fourth Amendment? That somehow the test is different for... You can stop someone and feel them up and ask them a bunch of questions for some limited period of time, or you can arrest them because you've had probable cause that it's done. That one requires this and one requires that. I'm just confused by that distinction. I think that the government agrees with you, Your Honor. I think we do not think it would be intuitive or at their disposal when considering whether they can make a Terry stop or whether they can make a felony arrest, but when deciding whether they can make a misdemeanor arrest, suddenly they're supposed to put on blinders and just forget even credible information from third parties or information that they themselves might know from other means, and the first case that my friend on the other side cites in footnote one of his reply brief shows a really extreme application of this, where you have a Florida court saying, we won't even consider things like whether this is a high-crime neighborhood or reports of past crimes, and that's just not how federal courts have conducted the probable cause analysis or asked officers to do so. So we think it would be really troubling and disruptive to law enforcement here, and I knew that Your Honor might disagree that there was enough to consider, sorry, enough to have probable cause even if the officers could not consider the complainant's information, but we just think we disagree with that and we just... If you look at the Florida cases and your opposing counsel cites a slew of them, it seems to me that Florida has, for better or worse, interpreted its statute, and I think in some ways, understandably, given that it was the one that got beat down by the Supreme Court in the 70s under its predecessor statute, has been very careful to say what is required to meet the threshold for, you're right and you point out sufficient evidence for conviction, but in some instances even probable cause. And so I don't know how we can read those without saying that walking in the street in some dark clothes at 5 in the morning with a bunch of officers is enough to say you're loitering and prowling under how Florida has interpreted it. That's what I'm having difficulty with. I understand, Your Honor. So again, I think the government agrees that if the officers weren't sure that these were scissors, if they didn't yet have the information that Grandia Gonzalez didn't live in this neighborhood, had no explanation for why he was there, maybe we couldn't get to probable cause. But we think that all of that comes in, and I know I've mentioned this. But they learned about the fact that he didn't live in the neighborhood after they stopped him. After they stopped him, but before the arrest. I know I've mentioned Gordon a couple of times this morning, but if the court looks back at that case, you'll see that after officers... Which case, I'm sorry? Gordon. Gordon, yeah. Gordon, the 11th Circuit's decision. After officers stopped Gordon and his companion, they saw that the car that they were in had munition on the backseat, the men gave conflicting stories about what they were doing, and the court considered all of that in the probable cause analysis. So we think that's totally proper. It's also consistent with the Supreme Court's analysis in Westby, where the officers considered information that they learned from the partygoers once they had already entered the house, but before arresting them. So we think that everything up to the moment of arrest comes in. We don't understand, to be the defendant, to be contesting that the officers learned everything I've talked about this morning before the arrest. Can I talk about some of your fallback arguments with regard to alternative felonies? You agree that that was not an argument that was raised below to the district court. That's right, Your Honor. How does that square with us considering that, and I think there's some strong suggestions that there may have been enough for a felony here, but for at least for probable cause. How do we square that with Campbell and how we review unpreserved issues? In Campbell, it was unpreserved, at least at the initial appeal. In this case, it'd be unpreserved at the district court level, but how does that square with the factors that we consider for when we look at unpreserved arguments? So what I would say, Your Honor, is that the Supreme Court and this court have made clear that a court of appeals can affirm on any basis that's clear in the record. That's obviously different from the forfeiture or waiver rules that would apply when a party is asking the court to reverse. We've fairly recently struggled with how to reconcile that with sort of our general preservation rules, and what we've essentially said, as I understand it, is when we're in a circumstance like this, there are extraordinary circumstances where we do overlook these things, where we will affirm on any basis even one not raised, but that it has to meet some specific factors. If it's a pure question of law and it's an important issue, if there's some sort of manifest injustice that's there, there's a bunch of different factors. I just wonder how you see this as fitting within sort of how we see extraordinary circumstances in dealing with an issue that we all agree was not preserved. I guess I'm not sure that we fall in the I am, but my understanding was that in Campbell, the government didn't brief the issue on appeal. I'm not sure that the government... It's not exactly the same, you're right. Right, I'm not sure that the government even raised it affirmatively at oral argument, or if that's just the first place that it came up, or if it even came up at oral argument at all, but we think, you know, we clearly briefed this issue. This court, the Supreme Court, have made clear that you can affirm on any grounds, and we took our friends on the other side to engage with the merits of our argument. They did point out that sometimes this argument's on appeal, but I don't think they've pointed to any authority saying that the court must decline to consider new Fourth Amendment arguments on appeal. So what I would say is that, you know, we think it's possible to resolve this case on that ground. We think it's possible to resolve this case by saying, assume arguendo that there is some in the presence requirement supportable at the common law. I don't think this court needs to reach out and decide what exactly that... Or I don't think this court needs to reach out and decide affirmatively that there is an in-presence requirement, because even assuming that there is one, I just don't think my friend on the other side has offered any evidence that it would invalidate the arrest at issue in this case. I'm not sure I'm convinced yet that a warrantless arrest for a misdemeanor can take place just based on some of the information available in the arrest documents that we're receiving that would not be sufficient evidence to prove a crime of the crime. Could we conclude that the in-presence requirement for a warrantless arrest for a misdemeanor is consistent with the Fourth Amendment, but not necessarily a prerequisite based on the way the law has developed over the years? I'm sorry, could you repeat the last part of your question, Your Honor? Could we conclude that a warrantless arrest for a misdemeanor not committed in the presence of the arresting officer is not required by the Fourth Amendment, but is consistent with the Fourth Amendment? So we think the court could decide that in a situation like this where at least some of the offense conduct occurs in the officer's presence, you know, we have an officer who's on the scene and could be a fact witness to at least part of the offense conduct, we think certainly that kind of arrest is consistent with the Fourth Amendment, and that would be one way for this court to resolve the case, especially since my friend on the other side doesn't identify any federal court of appeals that's applying a rule as stringent as his today. That's one way we could decide. Yes, Your Honor. Thank you, Ms. Holliday. Thank you. And Mr. Adler, you've reserved some time for rebuttal. Thank you, Your Honor. I just want to get out of the way Judge Luck's question about the felonies. The only felony they identified is trespass, which requires a dangerous weapon. We explained in our reply brief. Or intent to commit, or in the course of committing another crime. It's not just, and they argue both, it's not just the dangerous weapon. I agree with you that scissors are not a dangerous weapon, but it's a felony if the trespass is done in the course of committing another crime. Here they argue theft or burglary. And there seems to be some suggestion that the way this all happened that that was the case. Your Honor, I don't think the court can affirm on that basis because we would have disputed that probable cause in the district court had they proceeded under that theory. So I think it would be unfair to us. But I think more importantly, some of the other things that were said this morning, on the in the presence requirement, so there is not a single case that I have seen applying the in the presence requirement that looks to a third party's report about the conduct that the defendant engaged in. And so, and that would defeat the entire purpose of the in the presence rule. Remember, the purpose of this rule is that an arrest is a significant intrusion on somebody's personal liberty. And what the framers concluded, they balanced liberty, security, and they decided that when it comes to an arrest for a misdemeanor, something that the state considers to be a minor offense, we are not going to allow officers to assess the reliability of third parties on the scene. That is something for a neutral magistrate to do. And while this court may have different views about whether that balance was proper or not, whether it raises administrability concerns or not, that is the balance that the framers struck. I think we are stuck with that balance today under decisions like Jones and Lang. And I'm not sure how the court can get around the language in Jones and Lang. It says very clearly the common law is the minimum. It is the minimum. It is a baseline. That's the Supreme Court's own language. Can I ask a question? I know this is a hypothetical, but it's not what the facts are in this case. But let's assume that I'm the neighbor and I see the individual coming from behind my neighbor's house at 5 in the morning. Those are the actual facts, right? My husband then calls 911. The police show up. I explain what happened, what I saw. But then I give the police officer my ring camera and a video. Would that be sufficient for the officer to make a warrantless arrest? No, Your Honor. The officer could do a number of things with that. They could get a warrant based on that. The complainant can testify. They can issue a notice to appear. They can introduce that evidence at the trial. But I don't think that viewing surveillance after the fact is going to qualify. And we cite a number of Florida cases on pages 31 to 35 and footnote 6 of our initial brief that say, you know, we're not going to consider any third-party reports. And there's a case called the Lu Jing case that they looked at surveillance footage after the fact and said, no, that's not in the presence. If they're looking at surveillance footage contemporaneously at the time, that may be another thing. The Lefebvre Treatise at Section 5.1c talks about a number of the state cases that have applied the in-the-presence requirement. And there are going to be some hard cases in there. But one of the cases that is not hard, and they talk about a case called Dixon out of Michigan from 1974. And they block quote that case. And it says that, yeah, there's a collective sort of police thing. If any officer sees it, that's going to be fine. But if it is a third party, a victim, a witness, someone like that, no, that is not going to be okay. And we think that's just a matter of common sense. That is not in the presence of the officers. Right? And under no concept of that requirement, would it be the officers themselves seeing what the complainant reported? And the facts of this case are very clear. So whatever else may be true about in the presence, it's not going to apply to the facts here. And, I mean, look, I think at the end of the day, the facts of this case are quite striking. We have an individual walking down a residential neighborhood, 522 in the morning. He is not doing anything really suspicious when they see him. He's simply walking. He's wearing a tank top. It's Miami. It's West Miami. It's 80 degrees. He tells them exactly why he's there. I'm living out of my car. It's parked 8 to 10 blocks away at the Crucero restaurant. Here is my name. Here is my ID. The level of clarity has to be for a common law rule to sort of be established enough that we would deem it to be the floor of the Fourth Amendment. I don't think there's any standard that has exactly been developed. It's not like qualified immunity, though. I agree. What has the court said, though? It certainly has said that if it's not clear or we don't know what that rule is, then we can't defer to that rule, right? Sure. I mean, I think Lange is the most recent case that did this, and I think it found that the authorities were all – there was some confusion on the margins about things, but they said that's okay. But for purposes of this particular flight issue, the common law was pretty clear. Everyone seems to agree on that, and that's what we have here. Now, you can pluck some sentences here and there out of hail like you did, and you can find that it's not clear enough, and I can understand that ruling. I think that's the only way to do this. I'm not sure there's plucking sentences. I just read to you what the rule is. Well, that's, I think, the only authority that we have seen anywhere that cuts the other way. I don't think the court's in a position to – this court is in a position to do that when the Supreme Court itself has repeatedly articulated the rule. If the court says that, look, Supreme Court, you got this wrong. You didn't look at this close enough, so be it. But I think that's the only possible way to affirm in this case. We thank the court for its time. All right. Thank you, counsel.